

**Davis Wright Tremaine LLP**

21st Floor
1251 Avenue of the Americas
New York, NY 10020-1104

**Linda Steinman**

212.489.8230 tel
212.489.8340 fax

lindasteinman@dwt.com

January 11, 2021

**VIA CM/ECF**
Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

Discovery conference scheduled for February 2, 2021 at 10:30 a.m.  The dial-in information for the conference will be:

Phone Number: 888-363-4749
Access Code: 3667981

SO ORDERED.
Dated: 1/22/2021

_____
P. Kevin Castel
United States District Judge

Re:     *Dame Products v. The Metropolitan Transportation Authority, et al.*, No. 19 Civ. 05649

Dear Judge Castel:

    This firm represents the defendants in the above-referenced case.  We write pursuant to Part 3.B of the Court's Individual Practices in response to the letter of Plaintiff Dame Products ("Plaintiff" or "Dame") requesting that the Court set a discovery conference and compel Defendants to provide further responses to Plaintiff's Second Set of Requests for Admission (the "Second RFAs").  Plaintiff's letter leaves out important context for this discovery dispute, and the legal arguments Plaintiff raises are unfounded.

    Dame filed this lawsuit after the Metropolitan Transportation Authority ("MTA") rejected a specific set of proposed advertisements (the "Ads in Suit").  Dame alleges that the rejection of the Ads in Suit pursuant to the MTA's Advertising Policy (the "Policy") (Ex. A hereto) was unconstitutional for a number of reasons, and Defendants disagree.  *That* decision is the issue the parties are litigating in this case.  Plaintiff's Second RFAs do not seek information about that decision.  Instead, Plaintiff is seeking to force the MTA to make decisions about an *entirely different* set of proposed ads (the "New Ads"), proposed months after the lawsuit was filed, which have not received review by the MTA's Advertising Review Committee ("ARC") pursuant to the MTA's Policy, and then provide "admissions" about its analysis of those ads in order to "add to the corpus of evidencing concerning the constitutionality of Defendants' conduct."  ECF No. 44 ("Pl. Letter") at 2.  That is an inappropriate misuse of Requests for Admission under Rule 36.  Accordingly, Dame's contemplated motion to compel should be denied.

    **A.  Background**

    Before addressing the legal merits of Dame's position, it is important to place the submission of the New Ads in context.  Dame makes and sells what its own advertisements refer to as "Toys, For Sex."  When Dame submitted a series of ads for its vibrators containing that slogan, as well as messages like "Thank you from the bottom of my vulva," the MTA rejected them pursuant to section B.16 of its Policy, which bars advertisements from a "sexually oriented

DWT.COM

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

Hon. Kevin P. Castel
Page 2

business"—a term that is commonly used in zoning and other regulations to refer to business exactly like Dame's (*i.e.*, sellers of sex toys).

Dame filed this lawsuit in June 2019, asserting that rejection was unconstitutional, principally based on the theory that rejecting its sex toys ads was viewpoint discriminatory against ads concerned with "female sexuality." Dame makes this contention even though guidance the MTA has issued on its Policy explicitly states that "advertisements for sex toys or devices for any gender fall within this category," http://web.mta.info/mta/realestate/PDF/MTA-Advertising-FAQs.pdf, and, as the evidence in the case will show, the MTA has accepted advertisements for FDA-approved medications and supplements addressed to both male and female sexual issues. In short, the MTA has distinguished between ads for sex toys and ads for medical products or treatments for men and women aimed at sexual dysfunction—a line it believes is constitutional for a non-public forum operated by a transit agency, which is granted substantial leeway to "operat[e] in a manner that maintains the attractiveness of its service to a multi-cultural, multi-ethnic and religiously diverse ridership," including children. *Archdiocese of Wash. v. Wash. Metro. Area Transit Authority*, 897 F.3d 314, 331 (D.C. Cir. 2018); *see generally Lehman v. City of Shaker Heights*, 418 U.S. 298, 303 (1974) ("In much the same way that a newspaper or periodical, or even a radio or television station, need not accept every proffer of advertising from the general public, a city transit system has discretion to develop and make reasonable choices concerning the type of advertising that may be displayed in its vehicles.").

Dame states that it submitted the New Ads to MTA's advertising contractor, Outfront, in December 2019 in response to a solicitation from an Outfront employee who was plainly not aware that Dame had filed a lawsuit against the MTA six months earlier. *See* ECF No. 44-1. The New Ads promote a "Pillo," which Dame promotes as a "Pillow for Sex,"[1] and "Alu," an aloe-based lubricant for use during sex. (One of the New Ads focusing on the lubricant features a customer testimonial stating "Works great, and the BF [boyfriend] says it doesn't taste horrible either…").

For reasons unknown, Outfront never forwarded Dame's submission of the New Ads to the MTA. *See* ECF No. 44-2. On March 7, 2020, Plaintiff's counsel submitted the New Ads directly to undersigned counsel to inquire about the status of the review of the ads. We informed Plaintiff's counsel that the MTA had not received or otherwise seen the New Ads before but would review them at that point. Of course, as the Court is aware, within days of that communication, the entire country began the process of shutting down in response to the quickly spiraling COVID-19 pandemic. Public transportation was especially hard hit by the sudden changes, especially in New York City. By early March, the MTA was in what can only be described as "crisis mode" as it quickly sought to address the precipitous drop in customers while continuing to safely move frontline essential workers throughout the region. As we informed Plaintiff's counsel on March 13, this unavoidable shift in priorities made it impossible for the MTA to properly review Plaintiff's proposed New Ads at that time. *See* ECF No. 44-3.

---

[1] *See* Dame, *Pillo (Pillow for Sex)* https://www.dameproducts.com/products/pillo?gclid=EAIaIQobChMIoZDb1a7G7QIV6yitBh0rFAXGEAAYASAE EgK0SfD_BwE&gclsrc=aw.ds (last accessed Jan. 11, 2021).

Hon. Kevin P. Castel
Page 3

Over the ensuing months, Plaintiff did not press the issue of reviewing or running the New Ads. Our impression from counsel was that Dame—like most advertisers—had no interest in posting expensive ads on nearly empty subway cars.

Further, over time, once our firm focused further on the New Ads and the timing of their submission (including in connection with unsuccessful settlement negotiations), we became increasingly concerned that Plaintiff was attempting to use the New Ads less to promote its business than as a litigation strategy (as is further underscored by the Second RFAs). Defendants are prepared to defend the constitutionality and reasonableness of its *actual* application of the Policy to Plaintiff's Ads in Suit, and has provided non-privileged evidence that Plaintiff has sought concerning the MTA's review of those ads, as well as its review of and/or running of other ads that Plaintiff wishes to use as points of comparison. But we do not believe a plaintiff actively engaged in litigation against a party can compel that party to *create* new evidence for the plaintiff to use against it. Further, as we later wrote to Plaintiff's counsel:

> The MTA is engaging in the defense of this litigation in a good faith effort to confirm whether or not the judiciary concurs with its judgment that its Advertising Policy and its application to Dame Products as a "sexually oriented business" is constitutional. The MTA will, of course, comply with whatever the courts order after final adjudication of this Action, and if so warranted, revise its Advertising Policy to ensure that it meets the MTA's goals as a public transportation business while complying with the First Amendment. But until then, the MTA should not be forced to review advertisements presenting slight variations on the same questions Dame Products already has presented to the Court in this Action.

Ex. B, hereto (Dec. 14, 2020 Letter to Plaintiff's Counsel).

Accordingly, when Plaintiff's counsel renewed its inquiry about the MTA's review of the New Ads in October 2020 (*see* ECF No. 44-3), and quickly followed that request with the Second RFAs geared entirely towards obtaining the MTA's legal analysis of the New Ads, we informed Plaintiff's counsel that the MTA had not reviewed the New Ads, and would not be doing so at this time because we viewed their submission as a litigation ploy. *See* Ex. B. We also served objections to the Second RFAs, which Defendants amended shortly thereafter, following discussions with Plaintiff. *See* ECF No. 44-4. Defendants also provided Plaintiff with an email summarizing the authority supporting their position that the Second RFAs were legally improper. *See* Ex. C, hereto (Dec. 24, 2020 email to Plaintiff's counsel).

### B. The Second RFAs Are Legally Improper

The RFAs ask Defendants to provide their analysis of whether each of the New Ads falls into a series of categories listed as prohibited advertising under different provisions of the MTA's Policy. With one exception, none of these categories were the basis of the MTA's rejection of the Ads at Issue. Defendants raised several objections to the Second RFAs, including that the requests for admission focused on ads that were not in suit, and therefore did

Hon. Kevin P. Castel
Page 4

not seek relevant information; frequently failed to provide full and accurate recitations of the provisions of the Policy (*see* Ex. A); called for legal conclusions; and sought revelation of information protected by the attorney-client and work product privilege. In its letter to the Court, Plaintiff raises arguments as to each of these objections. But all of the objections must be understood in the context of the fundamental reality that Plaintiff is asking Defendants to make "admissions" about the review of proposed advertisements that the MTA has not formally reviewed. Its requests therefore ask Defendants' *counsel* to provide speculative legal analysis of how the MTA would hypothetically apply its Policy to the New Ads. Almost all of the relevant provisions of the Policy require quintessential legal analysis, including, for example, whether a given advertisement qualifies as indecent to minors or obscene under New York Penal Law §§ 235.21 and 235.00. In short, providing responses to the Second RFAs would necessarily require the MTA's in-house and outside counsel to do a legal review of the New Ads, and therefore reveal privileged legal analysis that would otherwise be subject to both the attorney-client and deliberative process privileges.

As courts have recognized, when "[p]roperly used," Requests for Admission under Rule 36 "serve the expedient purpose of eliminating the necessity of proving essentially undisputed issues of fact," and "are intended to save time and expense by narrowing the issues to be tried." *Carver v. Bank of New York Mellon*, No. 15-cv-10180, 2018 WL 4579831, at *1–2 (S.D.N.Y. Sept. 25, 2018) (citation omitted); *see also Diederich v. Dep't of Army*, 132 F.R.D. 614, 616 (S.D.N.Y. 1990) (cited in Dame's letter). As a general principle, that purpose is not remotely served by attempting to introduce *new* "issues" based on hypothetical scenarios or facts not in existence. And, indeed, courts have consistently held that Requests for Admission may not be used to force a party to "respond to a legal question unconnected to the facts of the case at bar." *Abbott v. U.S.*, 177 F.R.D. 92 (N.D.N.Y. 1997); *see also Atlanta Channel, Inc. v. Solomon*, No. 15-cv-1823, 2020 WL 6781221, at *5–6 (D.D.C. Nov. 18, 2020) (noting lack of "any precedent" for position that litigant "must respond to [a] request for admission based on a hypothetical situation," and citing "cases from various districts that concluded hypothetical requests for admission are improper"). Yet that is precisely what Plaintiff seeks to do with the Second RFAs.

Asking Defendants to provide the analysis of how the MTA's Policy applies to ads that the agency has neither accepted nor rejected does not seek admissions of "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a). Instead, Plaintiff is asking Defendants to manufacture and then reveal new, purely legal analysis. Courts have consistently held that RFAs may not be used as a vehicle to compel a government agency to apply laws or regulations. For example, in *EEOC v. Bloomberg, L.P.*, Judge Preska held that the defendant's requests that the government agency provide "admissions" on whether particular provisions of Title VII permit certain actions taken by the defendant called for "purely legal conclusions." No. 07 Civ. 8383, 2010 WL 3260150, at *1-2 (S.D.N.Y. Aug. 4, 2010). Likewise, in *Disability Rights Council v. Wash. Metro. Area Transit Authority* ("*WMATA*"), relied on by Judge Preska, the court held that RFAs could not be used to compel the government agency to "admit" how various statutes and agency regulations did or did not apply to the case. 234 F.R.D. 1, 3 (D.D.C. 2006). Dame tries to distinguish this authority on the ground that it is not asking the MTA

whether the MTA's rejection of the Ads in Suit was or would be constitutional. Pl. Letter at 5. But these cases stand for the broader—and plainly apposite—principle that it is "inappropriate for a party to demand that the opposing party ratify legal conclusions that the requesting party has simply attached to operative facts" or to "state [the party's] understanding of [a provision of] law." *WMATA*, 234 F.R.D. at 3.

Plaintiff also disputes that the Second RFAs call for privileged information because they are merely seeking "versions of the same determinations that Defendants regularly issue to businesses hoping to advertise on MTA property," which, by virtue of their distribution to those prospective advertisers, could not be privileged. Pl. Letter at 3. Plaintiff argues further that it is not seeking information about the MTA's deliberative process, but rather the decision itself, which is not privileged. *Id.* at 3-4. But what these arguments obviously miss is that the Second RFAs are not asking the MTA to admit to a decision it ever actually *made*; by asking Defendants to provide answers about how they believe different provisions within the Policy *would* apply to the New Ads, Plaintiff is inherently asking the MTA to provide privileged legal analysis (which would necessarily be performed by counsel), which would also reveal the agency's pre-decisional deliberative process.

Plaintiff's effort is akin to a party seeking to use the Freedom of Information Act, which facilitates public disclosure of documents that already exist, to force the government to create (and then produce) entirely new documents. *Cf. Hadden v. Bureau of Prisons*, No. 07-cv-8586, 2008 WL 5429823, at *6 (S.D.N.Y. Dec. 22, 2008) (holding that it is "well settled" that FOIA imposes no such obligation) (citation omitted)). So too here, Plaintiff cannot use the RFA discovery device to compel the MTA to apply its Policy to whatever variations on the Ads in Suit that Plaintiff can come up with. Throughout its letter, Plaintiff provides no authority that actually supports such a proposition.

Finally, although the propriety of the Second RFAs does not turn on the "sincer[ity]" of Dame's desire to run the New Ads in the subway, Pl. Letter at 5, Dame's contentions to that effect are belied by its arguments throughout its letter that it is seeking to use the MTA's review of the New Ads to "add to the corpus of evidence concerning the constitutionality of Defendants' conduct" by prodding the MTA to make a decision that, according to Dame, "would cast doubt on Defendants' stated basis for rejecting the Ads in Suit." *Id.* at 2-3. Defendants declined to play along with this gambit from the opposing party in an active litigation.

As Defendants have repeatedly made clear to Dame, they are prepared to litigate the actual issues presented by this lawsuit, and will, of course, abide by a final determination of the of those issues. In the meantime, however, Defendants are not required to provide Dame with their legal analysis of variations on those issues, and, again, Dame cites no authority to the contrary. Accordingly, and, in sum, since the Second RFAs do not ask for admissions from Defendants as to any presently existing facts or application of law to facts, Defendants' objections are proper. Any motion to compel further responses must fail.

Defendants look forward to discussing these issues further with the Court, in the event the Court holds a conference.

Hon. Kevin P. Castel
Page 6

Respectfully Submitted,

Davis Wright Tremaine LLP

/s/Linda Steinman

cc:   Victor Kovner